723 So.2d 342 (1998)
DEPARTMENT OF CHILDREN AND FAMILIES, Appellant,
v.
In the Interest of A.L., et al., Appellee.
No. 97-1839
District Court of Appeal of Florida, Third District.
December 17, 1998.
Robin Greene, Miami, appellant.
Nancy Schleifer, Miami, for Guardian ad Litem Program.
E. Joseph Ryan, Jr., Fort Lauderdale, for appellee/father.
Steven Grossbard, Miami, for appellee/mother.
Before SCHWARTZ, C.J., and NESBITT and GERSTEN, JJ.
*343 NESBITT, J.
The Department of Children and Families appeals the lower court's denial of termination of parental rights as to all three children in this case. We reverse.
At the hearing on the petitions for termination, the following evidence was adduced: The two oldest children, A.L. and A.B. have been in the foster system since 1988. A.L.'s father died in prison in California. A.B. and M.B. have the same father. The parents have been in and out of prison ever since A.L. and A.B. were adjudicated dependent. The mother admitted to a social worker that she was currently using five to ten rocks of crack cocaine per day and that she had past and present psychiatric problems. A.L. testified that her natural mother is "not my mother; she's just the person who gave birth to me. That's about it." Every case worker or social worker who knew the children recommended against reunification with the biological parents.
The parents did not use any of the opportunities that were given to them to stay out of jail or get a job or otherwise make themselves even minimally adequate parents. They were given four case plans prior to the filing of the petition for termination of parental rights, and they failed to substantially comply with any of them. The mother continued to use drugs, and when she was given referrals for drug programs, she did not attend, or else she would attend once or twice, then disappear. Year after year, in violation of their case plans, the parents would run off without telling the Department, or would get arrested and put in prison. They have failed these children over and over for years.
After a case plan was filed with the goal of termination of parental rights as to A.L. and A.B., the petition for termination was filed, and, at the same time, a petition was filed as to the youngest child, M.B., born in 1995. In denying the petition, the trial court observed that there was no adjudication of dependency as to M.B., and stated that "it looks like everybody dropped the ball in this dependency proceeding."
For the reasons that follow, we reverse.
It is conceded that no case plan was ever submitted for the youngest child, M.B.; thus, the trial judge's observations with respect to M.B. were correct. However, the trial judge was obviously unaware of a special provision in the statutes which allows termination, without a prior case plan, under certain circumstances. Section 39.464(1)(c), Florida Statutes, expressly provides that termination is appropriate:
When the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life or well-being of the child irrespective of the provision of the services. Provision of services is evidenced through a previous plan or offered as a case plan from a child welfare agency.
It is no longer a prerequisite to termination that a performance agreement or case plan be attempted in all circumstances. Through section 39.464(1)(c), the legislature made it unnecessary to attempt reunification in a case such as this one where the parents' failures make reunification detrimental to the children's welfare. There was clear and convincing evidence below that the parents' continuing involvement with these children would threaten their well being irrespective of the provision of services. Thus there was clearly a valid ground for termination of parental rights with respect to M.B., and the trial judge's failure to follow the statute was error.
The same evidence applied with equal force to A.L. and A.B.; it is patently clear that reunification has been attempted with the two older children over and over again. The Department made efforts under several case plans to reunify A.L. and A.B. with the parents, but the efforts were not met with cooperation or compliance. To require the Department to do something that the parents are obviously unwilling to do is illogical and contrary to the legislative intent spelled out in section 39.45(2), Florida Statutes:
It is the intent of the Legislature that each child be assured the care, guidance, and control in a permanent home which will *344 serve the best interests of the child's moral, emotional, mental, and physical welfare and that such home preferably be the child's own home or, if that is not possible, an adoptive home.... It is the intent of the Legislature that permanent placement... be achieved as soon as possible for every child in foster care and that no child remain in foster care longer than 1 year.
Reunification of the family is recognized as a laudable goal, but it is not to be attained at the expense of the children involved. Children have a right to a stable and safe home environment. It is well established in Florida that the best interest of the children overrides whatever interest a parent may have in continuing a parent-child relationship with them. See Padgett v. Department of Health & Rehabilitative Services, 577 So.2d 565, 570 (Fla.1991)("the overriding principle [is] that it is the ultimate welfare or best interest of the child which must prevail.")(quoting In re Camm, 294 So.2d 318, 320 (Fla.1974)); In re T.M., 641 So.2d 410 (Fla.1994); In re J.L.P., 416 So.2d 1250 (Fla. 4th DCA 1982).
In this case, to require M.B., a three-year-old baby, to suffer through an attempted case plan for reunification with these parents is wholly unrealistic and unworkable. It would be like turning a three-year-old baby loose on the streets. No reasonable, humane person would contend otherwise. The risk of harm to all three of these children is too great at this point to require the Department to take needless additional steps toward reunification. Parents have the right to care for their natural children, but this right is limited by the ultimate welfare of the children. See Padgett, 577 So.2d at 570; In re M.F.G., No. 97-3539, slip op. at 4, 723 So.2d 290,1998 WL 712697 (Fla. 3d DCA Oct. 14, 1998).
The parents have failed these children again and again for most of their lives. Because the evidence below demonstrated that the continuing involvement of the parents with these children threatens the children's well being, we reverse the order and remand for entry of an judgment terminating parental rights.
GERSTEN, J., concurs.
SCHWARTZ, Chief Judge (dissenting).
Even though, like the majority, I might well have ruled otherwise were I the trial judge, I believe that the rulings of the very able individual who actually was, in denying the department's application for termination of parental rights while expressly permitting a prompt reconsideration of the issuethat is, in giving the parents (and the children) one last chance to maintain the family relationshiprepresent a sound and appropriate exercise of judicial discretion which was fully supported by the record below. See Department of Children and Family Servs. v. M.B., 717 So.2d 607 (Fla. 4th DCA 1998); In the Interest of G.R.S., 647 So.2d 1025 (Fla. 4th DCA 1994); 11 Fla.Jur.2d Continuances § 50 (1997). I would therefore affirm the judgment under review without prejudice to the further proceedings contemplated by the trial court.