PARKER, Acting Chief Judge.
R.W.W. (the Mother) appeals the trial court’s order terminating her parental rights to her daughter, C.W.W. (the child).[1] The Department of Children and Families (the Department) sought an order of dependency and judgment terminating parental rights. The Mother challenges only the judgment terminating her parental rights. Because the evidence before the trial court was insufficient to support termination of the Mother’s parental rights, we reverse.
The child was born prematurely in late July 1999. At birth, both the child’s and the Mother’s blood contained traces of cocaine. The presence of cocaine in the child’s blood combined with her premature *1022 birth resulted in the child being placed in neonatal intensive care. It also resulted in the Department filing a shelter petition on behalf of the child. Upon the child’s release from neonatal intensive care, she was placed in shelter care by the Department.
Within one week of the Mother’s release from the hospital after the child’s birth, the Mother was arrested for possession of cocaine. Because the Mother was on probation at that time for a 1998 conviction for possession of cocaine and possession of marijuana, the Department of Corrections filed an affidavit charging the Mother with violating her probation. The Mother was jailed on the new charges as well as the charge of violating her probation.
In September 1999, when the child was two months old and while the Mother was in jail, the Department petitioned for an order of dependency and judgment terminating parental rights. The Department never offered the Mother a case plan with a goal of reunification. Rather, the only case plan filed by the Department sought termination of the Mother’s parental rights and had a goal of adoption. This case plan is not signed by the Mother, and there is no indication in the record that this case plan was ever discussed with the Mother.
At the hearing on the Department’s petition, the Department established that the Mother had pleaded nolo contendere to charges of possession of cocaine and possession of marijuana stemming from a 1998 arrest and that she had received a sentence of three years’ probation for that conviction. The Mother admitted to a five-year history of cocaine abuse and admitted to smoking marijuana on occasion. The Mother also admitted to using cocaine and marijuana during the two weeks preceding the child’s birth, including the use of cocaine the night before the child was born. However, the Mother testified that she was seeking drug treatment through the jail and that she wanted to get clean so that she could raise her child upon her release from jail.[2] The Mother did not contend that the child should not be adjudicated dependent. Rather, the Mother simply argued that she should be allowed an opportunity to comply with a case plan that had a goal of reunification. The Department argued that the Mother had been offered drug treatment after the child’s birth, but that the Mother had refused that service. The Department contended that this refusal established that the Mother was not amenable to services and therefore was not entitled to a case plan with a goal of reunification.
After hearing the evidence, the trial court found that the Mother had tested positive for cocaine and that the cocaine may have contributed to the child’s premature birth. The trial court also found that the Mother had a chronic substance abuse problem and lacked stable employment, stable income, and a stable residence at the time of the pregnancy and birth. As to the Mother’s refusal to accept the offer of drug treatment, the court stated:
I am troubled by the fact that [the offer of drug treatment] was apparently 24 hours after the premature delivery, the mother was under medication, the mother is suffering from substance abuse problems and may have had a sleep disorder associated with it, and may have been somewhat drowsy as one witness testified to. I’m not real convinced that the mother had refused drug treatment.
*1023 The trial court noted that the Mother now appeared to have a strong desire to pursue treatment but expressed skepticism that she would actually follow through with treatment. The court found that until the Mother had completed drug treatment, it would be dangerous for the child to be returned to her. Based on these findings, the court terminated the Mother’s parental rights. The trial court made no findings as to whether a case plan with a goal of reunification should have been offered, and the trial court did not find any of the Mother’s conduct sufficiently egregious to waive a case plan. The Mother timely appealed from this order.
Natural parents have a fundamental liberty interest in the care, custody, and management of their children. Santosky v. Kramer, 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In the Interest of R.W., 495 So.2d 133, 135 (Fla.1986). Because of this, the Department must prove the allegations supporting the termination of parental rights by clear and convincing evidence and must establish that termination of those rights is the least restrictive means of protecting the child from harm. Padgett v. Dep’t of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991). In this case, the Department sought termination under sections 39.806(l)(c) and 39.806(l)(f), Florida Statutes (1999). However, the Department did not put forth clear and convincing evidence sufficient to support termination under either section and did not establish that termination was the least restrictive means of protecting the child from harm. While we in no way condone the lifestyle and choices made by the Mother, we conclude that the trial court’s order is not based on record evidence, but rather is based on the trial court’s speculation that the Mother would fail in any attempt to comply with a case plan with a goal of reunification. Such speculation is not a valid basis for terminating parental rights.
Section 39.806(l)(c) allows for termination of parental rights
[w]hen the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services. Provision of services may be evidenced by proof that services were provided through a previous plan or offered as a case plan from a child welfare agency.
In this case, the Department established that the Mother had harmed the child as a matter of law. § 39.01(30)(g), Fla.Stat. (1999) (defining “harm” as including exposing a child to a controlled substance during pregnancy so that the child is adversely affected at birth). However, the Department did not establish that the continuing involvement of the Mother with the child would threaten the child’s life, safety, or health irrespective of the provision of services.
“Irrespective of’ means “independent or regardless of.” Webster’s Third New Int’l Dictionary 1196 (1986). Thus, in order to terminate parental rights under section 39.806(l)(c), the trial court must find that the child’s life, safety, or health would be threatened by continued interaction with the parent regardless of any services provided to the parent. In essence, the trial court must find that any provision of services would be futile or that the child would be threatened with harm despite any services provided to the parent. In this case, the trial court made no such finding, and if it had, such finding would not have been supported by the evidence.
Although the trial court found that the Mother had a chronic cocaine problem and found that the Mother had no stable *1024 job, no stable residence, and no family support, the trial court did not find that these were conditions that could not be resolved through the provision of services. The trial court did not find that the Mother had attempted and failed in any type of drug treatment program. Cf. M.A.P. v. Dep’t of Children & Families, 739 So.2d 1287 (Fla. 5th DCA 1999) (affirming termination after mother consistently denied the need for drug treatment); M.B. v. Dep’t of Children & Families, 739 So.2d 716 (Fla. 5th DCA 1999) (affirming termination after mother failed to remain drug free while working on case plan); B.M. v. Dep’t of Children & Families, 711 So.2d 616 (Fla. 3d DCA 1998) (affirming termination after evidence showed that mother had failed to achieve any results in several drug treatment programs); Atwell v. Dep’t of Health & Rehabilitative Servs., 675 So.2d 1030 (Fla. 5th DCA 1996) (affirming termination after finding that mother failed to attend drug counseling and remain drug free); In the Interest of C.B., 635 So.2d 139 (Fla. 4th DCA 1994) (affirming termination after finding that mother failed to complete drug treatment programs over a two-year period). The trial court also did not find that the Mother could never establish a stable home or obtain a stable job. Cf. M.B., 739 So.2d at 717 (affirming termination after the mother failed to obtain stable housing or a stable job during one and one-half years of working on a case plan). Here, the Mother testified that she had been participating in drug and alcohol treatment while in jail and that she was trying to arrange for admission to a drug treatment program upon her release from jail. In addition, the Mother discussed with the guardian ad litem using the services of the jail social worker to assist her in securing housing and a job upon her release from jail. The Mother told the guardian ad litem that she had been a waitress in the past and believed that she could get a waitressing job upon her release from jail. This evidence supports the Mother’s contention that she is amenable to treatment and that the provision of services would not be futile.
The trial court’s order implicitly finds that the Mother’s efforts to obtain drug treatment, a residence, and a job would be unsuccessful. However, this finding is based on nothing other than the trial court’s speculation. The Department presented no evidence that the Mother is not amenable to treatment or services. While the Department asserted that the Mother had refused services, the trial court specifically rejected this in its findings. It was error for the trial court to terminate the Mother’s parental rights based on its own speculation and the Department’s unproven assertions. See In the Interest of F.C., 26 Fla. L. Weekly D221, 780 So.2d 159 (Fla. 2d DCA 2001) (holding that while the father appeared to lack the ability to properly care for his children, it was error to terminate his parental rights without giving him the opportunity to try).
The Department correctly points out that it is not required to offer every parent a case plan with a goal of reunification. §§ 39.802(5), .806(3), Fla.Stat. (1999); Dep’t of Children & Families v. A.L., 723 So.2d 342, 343 (Fla. 3d DCA 1998), review dismissed, 729 So.2d 392 (Fla.1999). However, the Department has cited no case in which a parent’s rights were terminated based solely on the birth of a drug-dependent child. In every reported Florida case involving a drug-dependent newborn, there is either a failed attempt at a case plan or other evidence of abuse and neglect to support the trial court’s decision to terminate parental rights. For example, in B.M., the mother was offered a case plan after giving birth to a drug-dependent child. B.M., 711 So.2d at 618. At the termination hearing, the evidence showed that the mother had failed at several attempts in drug treatment programs and *1025 had routinely neglected both the baby and her older child who had already been adjudicated dependent. Id. Based on this, the trial court terminated the mother’s parental rights, and the Third District affirmed. Similarly, in Atwell, the mother was offered a case plan after giving birth to a drug-dependent child. Atwell, 675 So.2d at 1031. The trial court ordered termination after finding that the mother had failed to successfully complete drug treatment. Id.
In contrast to those cases, the Mother in this case has never been offered a case plan with a goal of reunification, much less failed to comply with one. In addition, there is no evidence of any abuse or neglect of either this child or any other child. In the absence of such evidence, the trial court’s order terminating the Mother’s parental rights must be reversed to give the Mother the opportunity to comply with a case plan with a goal of reunification.
The Department also sought termination pursuant to section 39.806(l)(f). That section provides that termination of parental rights is appropriate
[wjhen the parent or parents engaged in egregious conduct or had the opportunity and capability to prevent and knowingly failed to prevent egregious conduct that threatens the life, safety, or physical, mental, or emotional health of the child or the child’s sibling.
[[Image here]]
2. As used in this subsection, the term “egregious conduct” means abuse, abandonment, neglect, or any other conduct of the parent or parents that is deplorable, flagrant, or outrageous by a normal standard of conduct.
§ 39.806(l)(f)2., Fla.Stat. (1999). In this case, while the trial court’s order terminates the fathers’ parental rights based on this subsection, the trial court’s order does not make any findings that the Mother engaged in any egregious conduct. In the absence of such a finding, the Mother’s parental rights may not be terminated pursuant to this subsection. Therefore, to the extent that the trial court’s order may be based on this subsection, it must be reversed for the lack of factual findings to support it. § 39.811(5), Fla.Stat. (1999) (requiring the trial court’s written order to contain the facts upon which the decision to terminate is based).
Finally, the Department failed to establish that termination was the least restrictive means of preventing harm to the child. At trial, the Mother did not argue that she should have custody of the child or that the child should not be adjudicated dependent. The Mother admitted that she had problems, and she sought to be given a chance to comply with a case plan that would allow her the opportunity to eventually reunify with the child. The Department did not establish that the child would be harmed by continued custody with her foster family while the Mother worked on a case plan. Therefore, the Department failed to establish that termination was the least restrictive means available to prevent harm to the child.
Because the Department failed to put forth sufficient evidence to support termination of the Mother’s parental rights under either section 39.806(l)(c) or 39.806(l)(f), the trial court’s order must be reversed. The child remains dependent, and the Department must offer the Mother a case plan with a goal of reunification. If the Mother fails to comply with the case plan, the Department may again petition to terminate the Mother’s parental rights.
Reversed and remanded.
ALTENBERND and GREEN, JJ., concur.

. The trial court's order also terminated the parental rights of the two putative fathers of the child. Neither putative father appeared at the hearing and neither has appealed the termination of parental rights to this court.

. The Mother was sentenced to one year in county jail on the new charge of possession of cocaine. Her anticipated release date at the tíme of the termination hearing was in June 2000.