912 So.2d 368 (2005)
In the Interest of S.N.W., a child.
Adoption Miracles, LLC, Appellant,
v.
S.C.W. and Department of Children and Family Services, Appellees.
No. 2D05-996.
District Court of Appeal of Florida, Second District.
October 7, 2005.
*369 Elizabeth S. Wheeler of Berg & Wheeler, P.A., Brandon, for Appellant.
No appearance for Appellee S.C.W.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Tanya E. DiFilippo, Assistant Attorney General, Tampa, for Appellee Department of Children and Family Services.
ALTENBERND, Judge.
Adoption Miracles, LLC, a licensed child-placing agency pursuant to section 63.202, Florida Statutes (2004), and therefore an adoption entity pursuant to section 63.032(3), Florida Statutes (2004), seeks review of an order denying its motion to intervene in a dependency proceeding regarding the child, S.N.W. The order also set aside the birth mother's consent to the adoption of S.N.W. through Adoption Miracles. *370 Adoption Miracles filed this case as an original proceeding, seeking either a writ for mandamus, prohibition, or certiorari. We conclude the order is a final order as to Adoption Miracles and thus subject to appeal. See M.A.M. v. Viscount, 848 So.2d 1258 (Fla. 4th DCA 2003); Citibank, N.A. v. Blackhawk Heating & Plumbing Co., 398 So.2d 984 (Fla. 4th DCA 1981). Because the Department of Children and Family Services concedes that the trial court was required to permit Adoption Miracles to intervene pursuant to section 63.082(6)(b), Florida Statutes (2004), we reverse.[1] Further, as the Department appears to acknowledge, the birth mother's consent to the adoption of S.N.W. could not be set aside without notice to Adoption Miracles and an appropriate evidentiary basis to establish the consent was obtained by fraud or duress. See § 63.082(4)(b). This case demonstrates the need for procedural mechanisms to ensure cooperation and coordination between circuit courts when a child is the subject of a dependency in one division of the circuit court and the subject of a private adoption in another division or circuit. Cf. § 63.022(5), Fla. Stat. (2004) (indicating legislative intent to provide for cooperation between private adoption entities and the Department in matters relating to permanent placement options for children in the care of the Department when the birth parents wish to participate in a private adoption plan with a qualified family).
S.C.W. is the birth mother of S.N.W., an infant who apparently tested positive for cocaine upon her birth in November 2004. The Department sheltered the infant almost immediately after birth and initiated this dependency proceeding. An arraignment hearing was held on December 13, 2004, at which S.C.W. was appointed counsel and entered a denial of dependency. An adjudicatory hearing was scheduled for January 13, 2005.[2]
In late December the birth mother, apparently without the knowledge of the Department or the counsel appointed to represent her in the dependency proceeding, contacted Adoption Miracles. She selected prospective adoptive parents from Adoption Miracles' records and executed a consent to the adoption of S.N.W. through Adoption Miracles. The consent specifically provided, among other things, that S.C.W. understood (1) that she could consult with an attorney prior to signing the form; (2) that she did not need to sign the form; and (3) that she was not threatened, coerced, or intimidated to execute the consent, nor was she under any undue influence, duress, or improper pressure to sign the same. Further, the consent provided:
I understand that, if I wish to revoke my consent because I believe that my consent was obtained by fraud or duress, I must:
A. Notify Adoption Miracles, by writing a letter, that I wish to withdraw my consent; and
B. Prove in court that the consent was obtained by fraud or duress.
Prior to the adjudicatory hearing in the dependency proceeding, Adoption Miracles filed a petition to terminate parental rights pending adoption. See § 63.087, Fla. Stat. (2004). The petition was not filed within the dependency proceeding, although it disclosed that there was a pending dependency action in the juvenile division of the circuit court. Rather, pursuant to local rule, this action was filed in the East Division of the Thirteenth Judicial Circuit, a *371 division handling general civil, probate, and family law cases. It appears that Adoption Miracles included with its initial filings a motion for approval of placement of the child with the prospective adoptive parents and the preliminary favorable home study of the prospective adoptive parents. See § 63.092(3), Fla. Stat. (2004). On January 10, 2005, the judge assigned to East Division entered an order approving the placement of the child with the prospective adoptive parents and providing "they shall be named court-ordered temporary custodians of the minor pending finalization of [the adoption] proceedings." Because the birth mother had waived her right to notice of the adoption proceedings when she consented to the adoption, it is not clear if a hearing was held regarding the entry of this order. However, this order was not enforced, presumably due to the pending dependency proceedings.
Meanwhile, on January 7, 2005, Adoption Miracles filed a request to intervene in the dependency action and to dismiss the action and terminate the jurisdiction of the dependency court. Adoption Miracles attached to its motion a copy of the mother's consent to the adoption, a copy of the petition for termination of parental rights pursuant to an adoption, and a copy of the favorable preliminary home study of the prospective adoptive parents. Adoption Miracles' motion was then heard at the adjudicatory hearing previously scheduled for January 13, 2005. No issues other than the adjudication of dependency and Adoption Miracles' motion were noticed to be heard at this hearing.
No testimony was taken at the adjudicatory hearing. However, the birth mother indicated she no longer desired to consent to an adoption of the child, and her appointed counsel expressed concern that Adoption Miracles had permitted the birth mother to sign the consent without having the birth mother consult with appointed counsel. An attorney representing foster parents who had sheltered the child appeared and also expressed concern regarding the consent signed by the birth mother, although the attorney acknowledged the foster parents were not parties to, or participants in, the dependency proceeding.
The trial court denied Adoption Miracles' motion to intervene. The court also set aside the birth mother's consent to adoption, noting only that counsel for the birth mother in the dependency proceeding had not been advised of the documents or of the birth mother's intent to sign them. Because dependency proceedings are confidential, Adoption Miracles is unsure of the current status of the dependency proceeding, and no subsequent documents from that proceeding are in our record. It appears, however, that the trial court intended to proceed with the dependency, and the Department intended to offer the birth mother a case plan for reunification with the child.
Section 63.082(6) specifically provides:
(a) If a birth parent executes a consent for placement of a minor with an adoption entity or qualified prospective adoptive parents and the minor child is in the custody of the department, but parental rights have not yet been terminated, the adoption consent shall be valid, binding, and enforceable by the court.
(b) Upon execution of the consent of the birth parent, the adoption entity shall be permitted to intervene in the dependency case as a party in interest and shall provide the court having jurisdiction over the minor pursuant to the shelter or the dependency petition filed by the department with a copy of the preliminary home study of the prospective adoptive parents and any other evidence *372 of the suitability of the placement....
(c) Upon a determination by the court that the prospective adoptive parents are properly qualified to adopt the minor child and that the adoption appears to be in the best interest of the minor child, the court shall immediately order the transfer of custody of the minor child to the prospective adoptive parents, under the supervision of the adoption entity. The adoption entity shall thereafter provide monthly supervision reports to the department until finalization of the adoption.
(d) In determining whether the best interest of the child will be served by transferring custody of the minor child to the prospective adoptive parent selected by the birth parent, the court shall give consideration to the rights of the birth parent to determine an appropriate placement for the child, the permanency offered, the child's bonding with any potential adoptive home that the child has been residing in, and the importance of maintaining sibling relationships.
There is no question the statute required the trial court to permit Adoption Miracles to intervene in this proceeding once it filed the birth mother's consent to the adoption. The trial court thus erred in denying Adoption Miracles' request to do so. Further, the trial court erred in setting aside the birth mother's consent without notice to Adoption Miracles that this matter was going to be addressed and without an evidentiary basis to conclude that the consent was obtained by fraud or duress. See § 63.082(4)(b) ("A consent executed under this paragraph is valid upon execution and may be withdrawn only if the court finds that it was obtained by fraud or duress.").
Adoption Miracles argues additionally that the dependency court was not authorized to set aside the birth mother's consent to the adoption under any circumstances, relying on the language in section 63.082(6)(a) that an adoption consent executed when a child is in the custody of the Department but parental rights have not been terminated "shall be valid, binding, and enforceable by the court." Adoption Miracles does not assert that the birth mother is precluded from ever challenging the validity of her consent to the adoption in any proceeding when the child is the subject of dependency proceedings. Rather, Adoption Miracles asserts that only the court in which the adoption petition is filed can consider whether the consent may be withdrawn based upon an allegation of fraud or duress. We disagree.
Pursuant to section 63.032(7), the term "court" when used in chapter 63 adoption proceedings means "any circuit court of this state." Nothing in section 63.082 prohibits a circuit court that is properly exercising jurisdiction in a dependency case from addressing the validity of a birth mother's consent to an adoption. Indeed, section 39.013(2), Florida Statutes (2004), provides that the circuit court in which a dependency proceeding is filed has "exclusive original jurisdiction" of all proceedings under chapter 39, attaching upon the filing of an initial shelter or dependency petition, and that jurisdiction is retained "unless relinquished by [court] order, until the child reached 18 years of age." Section 39.013(4) requires that any orders of the dependency court "be filed by the clerk of the court in any dissolution or other custody action or proceeding and shall take precedence over other custody and visitation orders entered in those actions." Further, section 63.082(6) specifically refers to the dependency court as "the court having jurisdiction over the minor pursuant to the shelter or dependency petition."
*373 Here, a shelter petition and a dependency petition were filed before the birth mother signed a consent to the adoption of the child. These proceedings placed the child within the legal custody of the Department and vested "exclusive original jurisdiction" over all proceedings under chapter 39 with the circuit court in which the petitions were filed. See § 39.013(2). Thus, Adoption Miracles was required to intervene in the dependency proceeding to pursue the adoption of the child that was the subject of those proceedings. See § 63.082(6)(b). Further, because Adoption Miracles obtained its right to intervene through the birth mother's consent, the dependency court may address the validity of the consent within the dependency proceeding. This framework permits the pursuit of the adoption while ensuring the continued protection of the child in the event the adoption is not achieved.
This framework did not prohibit Adoption Miracles from filing its petition for termination of parental rights pursuant to adoption in another division of the same circuit court.[3] However, the proceedings in the adoption case are secondary to the dependency proceedings. That is, if the dependency court determines the birth mother's consent to adoption was valid, the dependency court must then determine, as required by section 63.082(6)(c), that the prospective adoptive parents are properly qualified to adopt the child and that the adoption appears to be in the best interest of the minor child.[4] If the dependency court determines both criteria are met, it must place the child with the prospective adoptive parents under the supervision of Adoption Miracles. Presumably, the adoption proceedings would be stayed during the time required for the dependency court's determination, but would then resume and proceed when the child was placed with the prospective adoptive parents, subject to Adoption Miracles providing monthly reports to the Department until the adoption is finalized. At that point, the dependency proceedings would presumably be stayed or dismissed pending the finalization of the adoption.
The issue presented here is not accurately described as one of subject matter jurisdiction. The court in which the adoption proceeding is pending and the court in *374 which the dependency proceeding is pending are both circuit courts with jurisdiction to determine these issues. The Thirteenth Judicial Circuit has established administrative divisions within the circuit court to process the different types of cases it handles more effectively. Neither the statutes nor this opinion mandate how the circuit court must administratively assign its cases, so long as the cases are within the jurisdiction of the circuit court. Nevertheless, pursuant to section 39.013(4), any orders of the dependency court "shall take precedence over other custody and visitation orders" entered in any other division of the circuit court.
Adoption Miracles was entitled to intervene in the dependency case pursuant to section 63.082(6)(b), given the birth mother's consent to the adoption of S.N.W. through Adoption Miracles. Further, the birth mother's consent could not be withdrawn without notice to Adoption Miracles that the issue was to be heard, and without evidence that the consent was obtained by fraud or duress. We therefore reverse the order on appeal and remand for further proceedings consistent with this opinion.
Reversed and remanded.
NORTHCUTT and CASANUEVA, JJ., Concur.
NOTES
[1] Although the birth mother was served with this petition and named as a respondent, she has not participated in this proceeding.
[2] It appears the birth father of S.N.W. is unknown.
[3] It is unclear whether local rules would have permitted Adoption Miracles to file its petition for termination of parental rights pursuant to adoption for assignment in the juvenile division before the court hearing the dependency case.
[4] We note that the "best interest" determination to be made under these circumstances is somewhat unique. If the birth parent has executed a valid and binding consent to an adoption, the court is not making a comparative assessment of the birth parents versus the prospective adoptive parents. Further, section 63.082(6)(d) specifically provides that the court "shall give consideration to the rights of the birth parent to determine an appropriate placement for the child"  an explicit recognition of the parents' constitutional right to the care, custody, and control of their children. See R.W.W. v. State, Dep't of Children & Families, 788 So.2d 1020, 1023 (Fla. 2d DCA 2001) (citing Santosky v. Kramer, 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Thus, the court is also prevented from comparing the birth parents' choice of prospective adoptive parents with other potential placements that the court or the Department might choose for the child. Cf. § 39.801, Fla. Stat. (2004) (requiring that a court considering a petition for termination of parental rights must consider the manifest best interests of the child: "This consideration shall not include a comparison between the attributes of the parents and those of any persons providing a present or potential placement for the child"). Viewed in this light, the "best interest" analysis requires a determination that the birth parent's choice of prospective adoptive parents is appropriate and protects the well-being of the child; not that it is the best choice as evaluated by the court or the Department in light of other alternatives.