# Third District Court of Appeal

## State of Florida

Opinion filed October 6, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2445
Lower Tribunal No. 10-15798
_____

**S.H., The Mother,**
Appellant,

vs.

**Department of Children and Families, et al.,**
Appellees.

An appeal from the Circuit Court for Miami-Dade County, Rosy Aponte, Judge.

Thomas Butler, P.A., and Thomas J. Butler, for appellant.

Family First Firm, Beth Kathryn Roland (Orlando), Sara Elizabeth Goldfarb (Tallahassee), for appellee Guardian ad Litem, and Karla Perkins, for appellee Department of Children and Families.

Before SCALES, LINDSEY, and MILLER, JJ.

MILLER, J.

In this appeal, S.H., the mother, challenges an amended final judgment terminating her parental rights to X.W., her three-year-old child, on the grounds of conduct threatening the life, safety, well-being, or health of the child irrespective of services, pursuant to 39.806(1)(c), Florida Statutes (2021), and failure to substantially comply with the case plan, pursuant to section 39.806(1)(e)1., Florida Statutes.[1] Because these statutory bases are not supported by competent, substantial evidence, we are constrained to reverse.

## BACKGROUND

In 2011, the mother lost her parental rights to her three oldest children as the result of a domestic violence incident. In December of 2018, she gave birth to the subject child. The following day, a Department of Children and Families investigator visited the mother in the hospital. No concerns were noted, but, nearly a month later, the mother was arrested for engaging in domestic violence with the putative father. She was released on house arrest to Lotus House, a sanctuary for homeless women and children.

---

[1] The trial court attempted to amend the final judgment again during the pendency of appeal but lacked jurisdiction to do so.

In February 2019, the mother returned to Lotus House with the child late at night. It was evident she had been drinking alcohol. The Department was notified, and the child was sheltered.

Two months later, the mother consented to a determination of dependency and admitted she had a blood alcohol level of 0.17 at the time of the incident. The child was placed in foster care, and the mother was offered a twelve-month case plan consisting of drug testing, parenting classes, medication management, and therapy. She was permitted twice weekly unsupervised visits with the child, and the stated goal of the case plan was reunification.

From August to October 2019, the mother consistently tested negative for drugs and alcohol. She also successfully completed her parenting program. She continued to exercise visitation, often picking the child up from daycare. In October, however, the mother observed the child crying and soiled at the facility. After she voiced concerns to the staff, an argument ensued, and the mother was barred from returning to the facility.

Between November 2019 and March 2020, the mother did not consistently visit with the child. The foster mother canceled multiple visits and requested that many be conducted via the Zoom platform rather than in person, purportedly because of the behavior of other children residing in the

3

foster home.[2]  The mother canceled other visits due to a lack of transportation and logistical concerns.

In January 2020, the predecessor judge issued a report finding the mother partially compliant with inpatient and outpatient treatment and individual therapy and compliant with the remaining case plan tasks.  The judge specifically noted the mother was "very close to substantially compliant" in all respects.  Two months later, the mother successfully completed her substance abuse treatment and court-ordered therapy.  She was then granted unsupervised overnight visitation with the child two nights per week.  This plan was abruptly modified as a result of the COVID-19 pandemic.  The mother was still allowed unsupervised visits, but she could only meet with the child during the day in public places.

In October 2020, the mother was arrested and jailed following an altercation with another resident of Lotus House.  The child was not present during the incident, but the trial court amended the stated case plan goal to adoption.  The following month, citing the pandemic, a negative home study, and the recent altercation, the guardian ad litem requested that the court

---

[2] During the same time frame, the foster mother purportedly failed to obtain proper dental treatment for the child, resulting in numerous untreated cavities.

4

curtail any in-person visitation. The mode of visitation was again changed, restricting the mother to virtual visits.[3]

In December 2020, the predecessor judge entered an updated review order, finding the mother compliant with her visitation and most other case plan tasks. Notwithstanding that order, the following month, the Department filed a petition to terminate the mother's parental rights, alleging three grounds: (1) conduct threatening the life, safety, well-being, or health of the child irrespective of services under section 39.806(1)(c), Florida Statutes; (2) failure to substantially comply with the case plan for a period of twelve months following the adjudication of dependency under section 39.806(1)(e)1., Florida Statutes; and (3) failure to substantially comply with the case plan while the child had been in care for any twelve of the last twenty-two months under section 39.806(1)(e)3., Florida Statutes.

The court convened a lengthy trial, at the conclusion of which it rendered an amended final judgment terminating the mother's parental rights. The trial court found clear and convincing evidence of conduct threatening the safety of the child irrespective of services and failure to substantially comply with the case plan. The court, however, eschewed the

---

[3] We express no opinion as to the propriety of virtual visitation, but observe the child was under two years old at that time.

additional ground of lack of substantial compliance while the child has been in care for any twelve of the last twenty-two months, finding instead, "due to the pandemic closures and issues in 2019 through 2021, [sic] [which] caused many services to be interrupted or halted, the [c]ourt will not be considering terminating parental rights on solely the issue of [the] [m]other having not complied with the case plan within 12 months." The instant appeal ensued.

## STANDARD OF REVIEW

Our review of termination of parental rights cases is highly deferential. N.L. v. Dep't of Child. & Fam. Servs., 843 So. 2d 996, 999 (Fla. 1st DCA 2003). We examine the record to determine whether the trial court's order is supported by competent, substantial evidence. See N.B. v. Dep't of Child. & Fams., 289 So. 3d 29, 32 (Fla. 3d DCA 2019); J.G. v. Dep't of Child. & Fams., 22 So. 3d 774, 775 (Fla. 4th DCA 2009). A lower court ruling will be affirmed "unless clearly erroneous or lacking in evidentiary support." N.L., 843 So. 2d at 999.

## ANALYSIS

To terminate parental rights, the Department must first prove at least one of the enumerated statutory grounds for termination by clear and convincing evidence. See N.B., 289 So. 3d at 32. The trial court must then consider whether termination is in the best interests of the child. Id. Finally,

6

the Department must also prove that termination is "the least restrictive means of protecting the child from serious harm."  Statewide Guardian Ad Litem Program v. A.A., 171 So. 3d 174, 177 (Fla. 5th DCA 2015).

Section 39.806(1)(c), Florida Statutes, imposes two requirements. First, the trial court must find that the parent's continued involvement "threatens the life, safety, well-being, or physical, mental, or emotional health of the child," irrespective of services.  § 39.806(1)(c), Fla. Stat.  "In essence, the trial court must find that any provision of services would be futile or that the child would be threatened with harm despite any services provided to the parent."  In re C.W.W., 788 So. 2d 1020, 1023 (Fla. 2d DCA 2001); see N.L., 843 So. 2d at 1002.  Second, the Department must show there is no reasonable basis to believe a parent will improve.  See B.A. v. Dep't of Child. & Fams., 297 So. 3d 586, 589 (Fla. 4th DCA 2020); J.P. v. Dep't of Child. & Fams., 183 So. 3d 1198, 1203 (Fla. 1st DCA 2016).  Although this requirement is typically established through expert testimony, "[w]here there is no expert testimony on this issue, or where the expert testimony is based on observations, interviews, or reports that are obsolete, reversal may be appropriate because the trial court's findings would be speculative."  Q.L. v. Dep't of Child. & Fams., 280 So. 3d 107, 115 (Fla. 4th DCA 2019).

Here, every witness, except for the case manager, who lacked any expertise, testified that the mother had benefited and could potentially continue to benefit from services.[4]  Indeed, the Department's own expert, a clinical psychologist, testified the mother made strides and any opinion as to termination was inappropriate absent an updated evaluation.

The alternative statutory ground cited below, section 39.806(1)(e)1., Florida Statutes, provides a basis for terminating parental rights if the parent fails "to substantially comply with the case plan for a period of 12 months after an adjudication of the child as a dependent."  See also § 39.806(1)(e)3., Fla. Stat. (providing another ground for termination if "[t]he child has been in care for any 12 of the last 22 months and the parents have not substantially complied with the case plan so as to permit reunification").  In this context, "substantial compliance" is attained when "the circumstances which caused the creation of the case plan have been significantly remedied to the extent that the well-being and safety of the child will not be endangered upon . . . being returned to the child's parent."  § 39.01(84), Fla. Stat. (2021).  This ground comes with a caveat.  "[T]he failure to comply with a case plan may not be used as a ground for termination of parental rights if the failure is due

---

[4] The trial court expressly rejected the proposition the case manager was an expert.

8

to the parent's lack of financial resources or the failure of the department to make reasonable efforts to reunify the parent and child." K.J. v. Dep't of Child. & Fam. Servs., 906 So. 2d 1183, 1184 (Fla. 4th DCA 2005).

In the instant case, citing section 39.806(1)(e)3., Florida Statutes, the trial court found, "due to the pandemic closures and issues in 2019 through 2021, [sic] [which] caused many services to be interrupted or halted, the [c]ourt will not be considering terminating parental rights on solely the issue of [the] [m]other having not complied with the case plan within 12 months." Notwithstanding this finding, the court then included among the two grounds for termination the mother's failure to substantially comply with the case plan for a period of twelve months following the adjudication of dependency. This inherent contradiction cannot be reconciled.

Regardless, in finding the mother failed to substantially comply with the case plan, the trial court pointed to the following factors: (1) the "[m]other only visited with the child 70% of the time and only saw [the] child in person twice when she had been granted unsupervised visits for over 12 months (even though she has been unemployed since 2019 and had time to do so);" (2) the mother engaged in domestic violence midway through her case plan; (3) the mother failed to provide an address for her home study; and (4) the mother continued to be unemployed.

As previously noted, however, the predecessor judge entered an order a month before the termination trial finding the mother compliant with nearly all case plan tasks. Among the areas deemed in compliance were the first ground relied upon in termination, visitation, and the third, housing. Other areas of compliance included parenting classes, treatment, random urinalysis, individual therapy, medication management, and substance abuse, mental health, and psychiatric evaluations. These inapposite findings cannot be harmonized given the proximity in time to the final hearing and the lack of reliance on intervening events.

Further, our survey of Florida decisional law yields no case in which a termination of parental rights was upheld solely on the grounds a parent failed to exercise all permissible visitation. Here, the terms of the visitation changed multiple times, the foster mother contributed in part to the cancellations, and the mother presented unrebutted testimony as to the challenges inherent in conducting virtual visitation with a toddler, along with her own economically precipitated transportation issues.

It is well-established that the failure to comply with a case plan for financial reasons, alone, cannot serve as a basis for termination. See K.J., 906 So. 2d at 1184. In the instant case, the mother was residing at a homeless shelter, did not have access to a motor vehicle, and was

unemployed. Despite these challenges, the mother completed the required modalities, and the testimony established she improved and remained compliant. Under these circumstances, we conclude the record lacks competent, substantial evidence to support the statutory grounds asserted for termination.

Accordingly, we reverse the final judgment of termination under review and remand this cause to the trial court for continuation of the child's dependency status, without prejudice to the Department reinstituting termination proceedings, if appropriate, at such time that it is able to meet its burden to present clear and convincing evidence of a statutory ground for terminating parental rights, along with clear and convincing evidence that terminating parental rights is the least restrictive means of protecting the child from harm and in the best interests of the child. N.L., 843 So. 2d at 999.

Reversed and remanded.