647 So.2d 1025 (1994)
In re The Interest of G.R.S., a child.
T.C.S., natural father, Appellant,
v.
STATE of Florida, DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, Appellee.
No. 93-1737.
District Court of Appeal of Florida, Fourth District.
December 21, 1994.
*1026 Abbe Cohn of Abbe Cohn, P.A., Fort Lauderdale, for appellant.
J. Paul Carland II, State of Fla., Dept. of Health & Rehabilitative Services, Fort Lauderdale, for appellee.
STEVENSON, Judge.
In this appeal, the natural father of G.R.S., a minor child, challenges an order of the circuit court terminating his parental rights. Because we agree with appellant that the trial court erred in terminating his parental rights for alleged abandonment and failure to substantially comply with a performance agreement, we reverse.
G.R.S., the minor child, was born on January 3, 1991, and on the very next day was removed from the custody of his mother because he was born with cocaine in his system. The minor child was placed in the custody of the maternal grandmother under the protective supervision of the Department of Health and Rehabilitative Services (HRS). On January 8, 1991, a Petition for Dependency was filed, alleging that both parents had substance abuse problems and that the father failed to protect the minor child in that he allowed his wife to ingest cocaine during her pregnancy. The parents consented to the dependency of G.R.S., and the child was adjudicated dependent by an order entered April 5, 1991, nunc pro tunc to February 8, 1991. To regain custody of the minor child, the parents were required to perform certain tasks including, among other things, evaluation by the court psychologist, family counseling and completion of a substance abuse program.
On March 13, 1992, the father entered into a performance agreement with the goal of reunification by June 30, 1992. This agreement was subsequently extended by the court to September, 1992. At the time that appellant signed the agreement he was in prison, where he had been since January 24, 1991. In the performance agreement, the father was required to do the following:
1. Abide by all rules of the correctional institute.

*1027 2. Seek out and actively participate in any drug programs and parenting classes offered by the facility.
3. Upon release from prison, appellant was to obtain and maintain adequate housing for himself and his son.
4. Have a psychological evaluation and, if therapy is recommended, attend and actively participate in all recommended therapy.
5. Maintain bi-weekly contact with HRS.
HRS, as a party to the performance agreement, agreed, among other things, "to offer referrals as needed to assist parents in completion of tasks."
On October 8, 1992, a Petition of Termination of Parental Rights was filed against the natural parents. The petition alleged, and the trial court subsequently found, that the father had failed to comply with the performance agreement and that he had abandoned the minor child. The natural mother signed a written surrender of parental rights and a waiver of notice, which the trial court accepted. The trial court therefore terminated the parental rights of both natural parents.
We hold that the court erred in finding that the father's failure to substantially comply with the performance agreement justified permanently terminating his parental rights in the context of the instant case. The record reflects that appellant substantially performed all of the tasks that were offered in prison, but could not perform certain tasks because they were not available to him. Appellant's testimony was unrefuted that parenting classes and family counseling were not available to him in prison. Further, his testimony was unrefuted that he had participated in at least one drug program offered in prison, but was transferred to another facility one week prior to completing this drug program. The facility to which appellant was transferred did not offer the drug program in which appellant had been participating. There was no evidence in the record that any drug programs were offered at the new facility.
Pursuant to the performance agreement, HRS was required to offer assistance and make referrals as needed to assist the father in completing his tasks. However, the record is absolutely devoid of any evidence of reasonable efforts by HRS to reunify the family, communicate with the father or offer the father meaningful assistance in completing any of the tasks required by the performance agreement. HRS failed to make any referrals to any social services which might have been beneficial to the father in meeting the goals of the performance agreement. HRS' sole measure of assistance to the father while in prison was to mail him the performance agreement. There was no evidence of any personal conferences or consultations between HRS and the father. For that matter, there was no evidence that HRS initiated any contact or communication with the father with the sole exception of sending the performance agreement. It was also unrefuted in the record that appellant's letters to HRS concerning his son and the case went unanswered.
Section 39.464(5), Florida Statutes (1993) provides that the failure to substantially comply with a performance agreement may be used as grounds for termination of parental rights only if the failure is not due to HRS' failure to make reasonable efforts to re-unify the family. See Padgett v. Department of Health and Rehabilitative Servs., 577 So.2d 565 (Fla. 1991); In the Interest of M.R.L., 608 So.2d 548 (Fla. 4th DCA 1992). Appellant received no assistance at all from HRS in "accessing appropriate reunification services" as required by Rule 10M-6.129(1)(a)10, Florida Administrative Code.
Lastly, the trial court erred in finding that the natural father "abandoned" G.R.S. because there had "been at least six (6) months of no communication between the time of the last letter by the father and the filing of the Petition for Termination of Parental Rights". As previously mentioned, during this period appellant was incarcerated and the child was in the custody of the maternal grandparents. The relationship between appellant and the maternal grandparents was strained at best. Appellant presented copies of letters that he had mailed to the child in January and February of 1992, but admitted that he had stopped corresponding *1028 because he never received any communication back from the grandparents and they would not accept his collect calls.
It is certainly significant to note that at this time the minor child was only 13 months old. Appellant's testimony was largely unrefuted that when he spoke with the maternal grandparents they would not give him any information regarding his son and told him that if he wanted to know anything about his son, he had to contact HRS. Appellant contacted HRS on several occasions and received no response, other than the performance agreement mailed to him in prison. Appellant requested that HRS facilitate some type of visitation between him and his son and that he receive progress reports on how his son was doing, but these requests were unheeded.
In In the Interest of B.W., 498 So.2d 946 (Fla. 1986), the supreme court held that incarceration does not, as a matter of law constitute abandonment. The court stated:
"[S]ince as a practical matter, an incarcerated person is unable to assume all parental duties, his failure to `evince a settled purpose' to assume all duties cannot support a finding of abandonment. This is not to say that an incarcerated person is incapable of voluntarily abandoning his children under section 39.01. However, his efforts, or lack thereof, to assume his parental duties through communicating with and supporting his children must be measured against his limited opportunities to assume those duties while imprisoned."
Id. at 948. In view of appellant's futile attempts to maintain a two-way communication between himself and the thirteen month old child (through the custodians) and his equally futile attempts to establish a two-way communication with HRS concerning his case, the record fails to show abandonment by clear and convincing evidence. See In the Interest of R.W., 495 So.2d 133 (Fla. 1986).
Accordingly, we reverse the final judgment and hold that the trial court erred in terminating appellant's parental rights. We remand this cause with directions that the trial court extend the time for appellant to substantially comply with the performance agreement (or an amended performance agreement if the need arises) for a period of six (6) months from the date of the issuance of mandate in this case in accordance with section 39.453(8)(e), Florida Statutes.
REVERSED AND REMANDED.
FARMER, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.