905 So.2d 993 (2005)
T.M., The Father, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D04-4750.
District Court of Appeal of Florida, Fourth District.
June 29, 2005.
*994 Karen Martin, West Palm Beach, for appellant.
Jeffrey Dana Gillen, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
WARNER, J.
We deny the motion for rehearing, withdraw our previously issued opinion and substitute the following in its place.
A father appeals the termination of his parental rights to C.S. The trial court terminated his rights under section 39.806(1)(c) and (e), Florida Statutes. Because there was no evidence to support termination under section (c), and the Department failed to offer any services to the father to comply with the case plan tasks, we must reverse.
C.S. was declared dependent, at age six, both as to her mother and father based upon allegations of abuse of the child by the mother's boyfriend. The father and mother were not married to each other. The father consented to the adjudication of dependency, and the adjudication order found that the father had "failed to communicate and/or provide support for the child amounting to abandonment." The order also stated that the father was incarcerated for sale of cocaine, indicating he had a substance abuse problem that would create a present risk to the child.
A case plan was executed, which indicated that at the time the plan was approved the father was incarcerated. It required the father to complete various tasks, including psychological evaluations, substance abuse treatment, anger management, and parent effectiveness training. Some of these tasks were required to begin immediately. Others required the father to commence them upon release from prison, which from the record would be sometime in 2004. The case plan had a reunification or adoption goal of March 31, 2004. According to the order, the father was present at the hearing to approve the case plan and signed a copy of it. After the case plan was approved, DCF never contacted the father in prison to aid him in complying with the case plan.
The mother, who had disappeared, was located and entered an appearance in the proceedings. At a subsequent judicial review, the reunification goal date was modified to July 1, 2004. Prior to that date, DCF petitioned for termination of the father's rights after the mother agreed to a voluntary termination. The father, who was still incarcerated, was transported to the advisory hearing for the termination proceeding in June 2004. At that time he *995 was also notified of the adjudication date of September 13 and advised to make sure that he stayed in contact with his attorney when he was released from prison in August. The court advised him that failure to attend the termination hearing would constitute his consent to the termination of his parental rights.
The petition for termination alleged two grounds: (1) the "child continues to be abused, abandoned or neglected as evidenced by the failure of the father to substantially comply with the terms and conditions of the Case Plan, constituting grounds for termination of parental rights pursuant to Section 39.806(1)(e), Florida Statutes;" and (2) "[t]he father has engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent(s) in the parent-child relationship threatens the life or well-being of the child irrespective of the provision of services, constituting grounds for termination of parental rights pursuant to section 39.806(1)(c), Florida Statutes."
Two weeks after the advisory hearing, the DCF case worker wrote the father a letter in prison advising him that DCF was pursuing termination of his rights due to his noncompliance with the case plan, the goal date of which had already expired. She asked him to provide proof of any steps he had taken to perform any of the required tasks in the plan. She also enclosed a copy of the case plan and advised him to ask the prison personnel if the prison offered any comparable services to those required in the plan. The case worker also advised the father of service providers that would be available to the father upon his release from prison. In August 2004, the father was scheduled for release in less than two months.
The final hearing was set for September 13 but did not occur on that date because of the 2004 hurricanes. The case was rescheduled for November 3, 2004. While the father did not appear at that hearing, his attorney did, but she had not heard from the father since the advisory hearing in June. No one knew where the father was, nor had he contacted any person involved in the proceedings since his release from prison.
The only evidence presented at the hearing was the testimony of the custodian of the child and the present case worker. The custodian testified that the father had not contacted her or the child at any time since she was declared custodian in September 2003, even after he had been released from prison. The father knew how to contact the custodian and knew where she lived. The case worker testified that she had been assigned the case in July of 2004 and had not been able to contact the father. She had obtained a phone number for the father from the custodian and tried calling it several times, the last time receiving a message that the phone had been disconnected. The father had not attempted to contact the case worker.
The court terminated the father's rights, finding under section 39.806(c) that the father had engaged in conduct that demonstrates his continuing involvement in the parent-child relationship threatens the life, safety, well-being or physical, mental, or emotional health of the child irrespective of the provision of services. It also found that the father had abandoned the child by failing to make contact with the child, DCF, or his attorney after release from prison, and failed to substantially comply with the terms and conditions of the reunification case plan. The order stated that the Department had done "everything they possibly could have done to assist the father with completing his case plan, including the request to extend the goal date while he was still incarcerated, and despite *996 such efforts, the father has not done anything on the case plan or even kept in contact with the Department or his attorney." The father appeals the order terminating his parental rights.
Although this record provides ample evidence of abandonment under section 39.806(1)(b),[1] DCF concedes that the father's parental rights cannot be terminated on this ground because it was not alleged as a ground for termination in the petition. See R.S. v. Dep't of Children & Families, 872 So.2d 412, 413 (Fla. 4th DCA 2004). The father's attorney objected to termination on this ground at trial. Therefore, the issue was not tried by implied consent. And, while the father did not appear at trial, this cannot be viewed as consent to termination because he did not receive notice of the changed date of the adjudicatory hearing. See § 39.801(3)(d), Fla. Stat. The trial court recognized its inability to default the father for this reason, albeit the court was rightfully angered by the father's failure to contact his attorney after release from prison.
The trial court's finding that the father engaged in conduct that demonstrates his continuing involvement in the parent-child relationship would threaten the child's life, safety, and well-being is not supported by any evidence presented at trial. Section 39.806(1)(c) requires that the conduct of the father towards the child or other children demonstrate that his continuing involvement with the child threatens the child. Because the father has not even been in communication with the child for many years, only abandonment of the child, not threats to the child's life, safety and well-being, would justify termination of his parental rights, but DCF concedes that it failed to plead abandonment. There was no evidence presented at all with respect to the father's conduct toward the child or any threat he would pose to the child.
The focus of DCF's case was the father's failure to comply with the case plan, not the father's danger to the child. In this respect this case is identical to In re H.F., 893 So.2d 641 (Fla. 2d DCA 2005). There the trial court also terminated parental rights pursuant to section 39.806(1)(c) when the entire trial involved whether the mother substantially complied with the case plan. In reversing, the appellate court stated:
At the final hearing, the focus of the Department's case was on the Mother's noncompliance with the case plan and all of its evidence was directed to that issue. The Department devoted a substantial portion of its case to the Mother's failure to complete an intensive parenting course. Although the Mother admitted that she did not complete the course, the Department did not prove, or even argue, that the Mother's failure to complete the course threatened the child in any way. In short, the Department's reference to section 39.806(1)(c) in its amended petition was little more than filler. Because the Department did not present clear and convincing evidence that the Mother's continuing involvement in the parent-child relationship threatened the life, safety, or well-being of the child, the trial court's finding that termination was warranted under section 39.806(1)(c) is unsupportable.
893 So.2d at 642-43.
There was also no proof that the father's conduct would continue irrespective of the *997 provision of services, as required by the statute, because no services were provided to the father in this case. Finally, as the trial court's order only contained the statutory language, it failed to specify why it felt the father was not amenable to services. See C.B. v. Dep't of Children & Families, 874 So.2d 1246, 1251 (Fla. 4th DCA 2004).
As to termination pursuant to 39.806(1)(e), the petition alleges, in accordance with the statute, that the father's failure to complete the case plan demonstrates that the child continues to be abused, abandoned or neglected. However, the statute provides a caveat: failure to complete a case plan within twelve months of the adjudication of dependency is evidence of abandonment, abuse or neglect, "unless the failure to substantially comply with the case plan was due either to the lack of financial resources of the parents or to the failure of the department to make reasonable efforts to reunify the parent and child." § 39.806(1)(e) (emphasis added).
"Where a court is terminating parental rights based on a parent's failure to comply with a case plan or a performance agreement, it is axiomatic that the parent must have the substantial ability to comply with the plan or agreement." In Interest of E.L.H., Jr., 687 So.2d 924, 925 (Fla. 2d DCA 1997). Furthermore, "[w]hen a parent and the department enter into a case plan, the department must make reasonable efforts to reunify the family." P.A. v. Dep't of Health & Rehabilitative Servs., 685 So.2d 92, 93 (Fla. 4th DCA 1997) (citing § 39.464(1)(e), Fla. Stat., renumbered 39.806(1)(e)).
In this case, the Department made no efforts to reunify the father with the child. Although the father was incarcerated when the case plan was entered, the Department made no effort to assist the father in securing the type of services he would need to substantially comply with his case plan while in prison. Courts have refused to terminate an incarcerated parent's rights for noncompliance with a case plan when the Department has failed to assist that parent in complying with the plan. See In re R.H., 726 So.2d 377 (Fla. 2d DCA 1999); C.C. v. Dep't of Children & Family Servs., 854 So.2d 720 (Fla. 2d DCA 2003).
We ruled similarly in T.C.S. v. Department of Health & Rehabilitative Services, 647 So.2d 1025 (Fla. 4th DCA 1994), where a father was incarcerated. Although the father in that case had performed some tasks in prison on his own, we explained:
Pursuant to the performance agreement, HRS was required to offer assistance and make referrals as needed to assist the father in completing his tasks. However, the record is absolutely devoid of any evidence of reasonable efforts by HRS to reunify the family, communicate with the father or offer the father meaningful assistance in completing any of the tasks required by the performance agreement. HRS failed to make any referrals to any social services which might have been beneficial to the father in meeting the goals of the performance agreement. HRS' sole measure of assistance to the father while in prison was to mail him the performance agreement. There was no evidence of any personal conferences or consultations between HRS and the father. For that matter, there was no evidence that HRS initiated any contact or communication with the father with the sole exception of sending the performance agreement. . . . Section 39.464(5), Florida Statutes (1993) provides that the failure to substantially comply with a performance agreement may be used as grounds for termination of parental rights only if the failure is not due to HRS' failure to *998 make reasonable efforts to re-unify the family. See Padgett v. Department of Health and Rehabilitative Servs., 577 So.2d 565 (Fla.1991); In the Interest of M.R.L., 608 So.2d 548 (Fla. 4th DCA 1992). Appellant received no assistance at all from HRS in "accessing appropriate reunification services" as required by Rule 10M-6.129(1)(a)10, Florida Administrative Code.
647 So.2d at 1027.
While the father in T.C.S. was more proactive than the father here in securing some services without the Department's assistance, the initiative of the parent does not excuse the Department's complete lack of effort in fulfilling its statutory duty. In T.C.S. the father also attempted to communicate with the Department regarding his son. In this case, the father sent a letter inquiring of the child and requesting photos, but it is unclear from the record whether the Department responded to the father.
The Department maintained that the father was responsible for seeking the assistance of prison officials in order to comply with the case plan. However, as the father points out, the Department is not permitted to delegate its duty to make efforts to reunify the family. See P.A., 685 So.2d at 92 (finding termination of mother's parental rights would be improper if her ability to comply with case plan was affected by Department's failure to provide reasonable assistance by instead deferring its duty to the employee of a mental health center). While the father, unlike the appellant in T.C.S., did not produce evidence that services were not available to him in prison, it is the Department that bears the "burden of presenting clear and convincing evidence of the grounds under section 39.806(1) . . ., for terminating parental rights. . . ." J.F. v. Dep't of Children & Families, 890 So.2d 434, 439 (Fla. 4th DCA 2004). Thus, the Department needed to present evidence that services were available to the father while incarcerated, which he failed to access.
As an alternative, the Department maintains that the father's failure to comply with the case plan after his release from prison justifies termination. According to the record, the father was released from prison on August 31, 2004. On that date, and for the next month, the area was battered by two hurricanes. They caused the cancellation of the originally scheduled adjudicatory hearing on termination. The adjudicatory hearing was rescheduled and held on November 3, 2004, a mere two months after the father's release and only a month after the hurricane devastation passed. The Department did not contact the father during this period and offer services. It had already filed the petition for termination and was simply awaiting the adjudicatory hearing. The father's failure to substantially comply with his case plan for the month and a half before the rescheduled termination hearing can hardly be deemed a substantial failure to comply with the case plan, when the plan had already expired, and termination was expected.
As the Department did not present evidence that the father had the ability to comply with the case plan while incarcerated and failed to offer or provide any services to the father during that time to complete the case plan's tasks, the trial court's conclusory ruling that the Department had done everything it could to reunify the parent and child was simply unsupported by any evidence.
We are sympathetic to the trial court's findings that the father had abandoned his child by making no attempt to communicate with either the Department or the child. However, the Department chose to *999 terminate based upon noncompliance with the case plan. It failed to prove this ground because of its own lack of effort to provide the father with any ability to comply with the plan.
We reverse the order terminating the father's parental rights and remand for further proceedings.
KLEIN and TAYLOR, JJ., concur.
NOTES
[1] Some of the documents in the file indicate that the father has had no contact with the child since she was eighteen months old.