961 So.2d 1060 (2007)
T.C., the Mother, Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 4D07-645.
District Court of Appeal of Florida, Fourth District.
July 25, 2007.
Frank A. Kreidler, Lake Worth, for appellant.
*1061 Jeffrey Dana Gillen, West Palm Beach, for appellee Department of Children and Families.
Wendie Michelle Cooper, Orlando, for appellee Guardian ad Litem Program.
STEVENSON, J.
In this case, a mother's parental rights to sons, E.C. and D.R. were terminated. To terminate parental rights, the State must establish (1) the existence of one of the statutory grounds set forth in chapter 39; (2) that termination is in the child's best interests; and (3) that termination is the least restrictive means of protecting the child from harm. See, e.g., C.M. v. Dep't of Children & Families, 953 So.2d 547 (Fla. 1st DCA 2007) (on reh'g). The trial court relied upon sections 39.806(1)(c), 39.806(1)(e) and 39.802(8) as the statutory grounds warranting termination. We affirm. The mother raises a number of issues on appeal. We write to address only oneher contention that termination was not appropriate under any of these statutes because the time for completion of the case plan had not expired and any failures on her part were the result of her incarceration and DCF's failure to provide services. The record simply does not support the mother's claim in this regard.
Section 39.802(8), Florida Statutes, provides:
If the department has entered into a case plan with a parent with the goal of reunification, and a petition for termination of parental rights based on the same facts as are covered in the case plan is filed prior to the time agreed upon in the case plan for the performance of the case plan, then the petition must allege and prove by clear and convincing evidence that the parent has materially breached the provisions of the case plan.
The concept of "material[] breach[]" is addressed in section 39.806(1)(e)2., which allows for termination where the child has been adjudicated dependent, a case plan has been filed and
[t]he parent has materially breached the case plan by making it unlikely that he or she will be able to substantially comply with the case plan before the time for compliance expires. Time is of the essence for permanency of children in the dependency system. In order to prove the parent has materially breached the case plan, the court must find by clear and convincing evidence that the parent is unlikely or unable to substantially comply . . . before time expires. . . .
"`A trial court's determination that evidence is clear and convincing will not be overturned unless it may be said as a matter of law that no one could reasonably find such evidence to be clear and convincing.'" C.M., 953 So.2d at 550 (quoting L.B. v. Dep't of Children & Families, 835 So.2d 1189, 1194 (Fla. 1st DCA 2002)).
The mother's case plan, formally approved on February 15, 2006, required drug treatment, random drug testing, psychological and psychiatric evaluations and recommended treatment, parenting classes, counseling, stable employment and housing, and not committing any new law violations. It is true that the mother was incarcerated from May 23, 2006 through October 6, 2006; that DCF offered the mother no services while she was incarcerated; and that the petition for termination of parental rights was filed some three months prior to the expiration of the case plan. And, it is these facts the mother relies upon in asserting that the termination was in error as she was not afforded the opportunity to comply.
*1062 These facts alone, though, fail to portray the complete picture. The children were initially removed from the home as a consequence of allegations of drug abuse and deplorable conditions in the home. The children were removed a second time about a month later based on similar allegations and placed in shelter in December of 2005. The mother was deemed to have consented to their adjudication as dependent children due to her failure to appear for the proceedings.
As a consequence of the conditions of the home and children, the mother was charged with, and pled guilty to, child neglect. She was sentenced to two years probation. A little less than two months prior to formal adoption of a case plan, DCF held a formal staffing. The mother expressed a desire to immediately begin taking steps to have her children returned and DCF began making referrals. Shortly thereafter, when DCF attempted to contact the mother, they found the number she had provided disconnected and DCF was unable to reach her for approximately the next month. When DCF did finally speak with the mother at the end of January 2006, she had been admitted to a drug abuse halfway house. When DCF tried to contact her there about two weeks later, the mother had left the program as a consequence of a medical condition and failed to return. The mother then failed to appear for a scheduled visit with the children and could not be reached from February 10 through February 14. The next day, the mother's case plan was formally approved by the court.
On February 15th, the same day her case plan was judicially approved, the mother tested positive for drugsa violation of her probation for the child neglect charges and her case plan. The mother was incarcerated from February 15 through February 28, 2006, and then released to a drug treatment program and returned to probation. DCF had contact with the mother in March and April, facilitating visitation with the children and making referrals for a psychological evaluation, parenting classes, and counseling. By the middle of April, the mother had left the drug treatment program. The mother did not follow up on any of the referrals nor attempt to advise DCF of her whereabouts. On May 23, 2006, the mother again tested positive for drugs and was arrested for violation of probation.
It is clear that from the time of the children's removal until the mother's May 2006 incarceration, DCF made the necessary referrals and attempted to help the mother complete the tasks in her case plan. The mother failed to avail herself of these services. Rather than pursue drug treatmentperhaps the most significant aspect of her case plan, the mother continued to use drugs and twice violated the conditions of her probation by so doing. She failed to take advantage of referrals made by DCF in January, February, March, and April. She had on multiple occasions left DCF without a means of contacting her. By the time of the mother's May 2006 incarceration, she had already materially breached the terms of her case plan. The breach was not occasioned by DCF's failure to provide services. And, by the time of the mother's October release from jail, there was little likelihood that she would or could substantially comply with the case plan. The mother apparently had no inclination to undergo drug treatment because, as of the December 20, 2006 termination hearing, she was not attending AA or NA meetings or receiving any other type of treatment.[1] Further, *1063 upon the mother's release from jail, there were only about two months remaining on a case plan that required the mother to obtain stable housing and employment.
Accordingly, on this record, we find there was competent, substantial evidence to support termination pursuant to sections 39.802(8) and 39.806(1)(e)2. and reject the mother's claim that the order of termination must be reversed because any breach or failures on her part were occasioned by her incarceration and DCF's failure to provide her services during such time. Cf. In re D.R., 812 So.2d 447 (Fla. 2d DCA 2002).[2]
Affirmed.
SHAHOOD, C.J., and WARNER, J., concur.
NOTES
[1] While the mother claimed to have gotten drug treatment while incarcerated, she failed to provide any documentation to substantiate her claims.
[2] Our holding makes it unnecessary to consider whether termination was warranted under section 39.806(1)(c). See J.C. v. Dep't of Children & Families, 959 So.2d 431 (Fla. 4th DCA 2007). We have considered the other issues raised by the mother and find them to be without merit.