979 So.2d 1075 (2008)
In the Interest of T.H., a child.
T.H., Appellant,
v.
Department of Children and Family Services and Melinda Barnes, as the guardian ad litem, Appellees.
No. 2D07-2869.
District Court of Appeal of Florida, Second District.
April 4, 2008.
*1078 Nancy B. Silva, Tampa, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Kelley R. Schaeffer, Assistant Attorney General, Tampa, for Appellee Department of Children and Family Services.
Tracy L. Ellis, Orlando, for Appellee Melinda Barnes.
VILLANTI, Judge.
T.H., the Father, appeals from the trial court's order terminating his parental rights to his son, T.D.H. We reverse.
To justify termination of parental rights, the Department has the burden to show "by clear and convincing evidence that reunification with the parent poses a substantial risk of significant harm to the child," such as abuse, neglect, or abandonment. Padgett v. Dep't of Health & Rehabilitative Servs., 577 So.2d 565, 571 (Fla. 1991). The supreme court has defined "clear and convincing evidence" as
an "intermediate level of proof [that] entails both a qualitative and quantitative standard. The evidence must be credible; the memories of the witnesses must be clear and without confusion; and the sum total of the evidence must be of sufficient weight to convince the trier of fact without hesitancy."
Fla. Dep't of Children & Families v. F.L., 880 So.2d 602, 614 n. 7 (Fla.2004) (Cantero, J., specially concurring) (quoting In re Davey, 645 So.2d 398, 404 (Fla.1994)); see also J.R. v. Dep't of Children & Family Servs. (In re J.B.), 923 So.2d 1201, 1205-06 (Fla. 2d DCA 2006). Here, the Department sought termination of the Father's parental rights on four grounds: abandonment under section 39.806(1)(b), Florida Statutes (2006), continuing involvement *1079 threatening the welfare of the child under section 39.806(1)(c), continued abandonment after a case plan under section 39.806(1)(e)(1), and a material breach of the case plan under section 39.806(1)(e)(2). However, because the Department did not present clear and convincing evidence on any of the grounds it alleged, the termination of the Father's parental rights cannot stand.

Abandonment under § 39.806(1)(b)
The trial court first found that the Father had abandoned T.D.H. and thus that termination was proper under section 39.806(1)(b). The evidence does not support this conclusion.
At the adjudicatory hearing, the evidence showed that the Father and T.D.H.'s mother were unmarried and did not live together when T.D.H. was born on November 20, 2002. After T.D.H. was sheltered by the Department shortly after birth, the Department placed T.D.H. with the Father, where he lived from December 23, 2002, to April 11, 2003. In April 2003, T.D.H. was returned to his mother, but he was sheltered again a few months later. The Department placed T.D.H. with the Father again from March 25, 2004, until July 7, 2005. During this time, the Father was the sole caretaker of T.D.H. and was listed as a "nonoffending parent" in the Department's petitions relating to T.D.H.'s mother.
The Father testified at the adjudicatory hearing that he has not been able to work full time since 1989. Instead, he lives on Social Security disability payments and the sporadic income he earns as a house painter when he is able to work. The Department was aware of the Father's lack of employment and financial status when it placed T.D.H. with him in 2002 and 2004, and the Department presented no evidence that T.D.H. had not been well-cared for while in the Father's custody.
T.D.H. was subsequently removed from the Father on July 7, 2005, after the Father left T.D.H. unsupervised with the mother while he visited relatives.[1] Three weeks later, the Father was arrested for a violation of his pretrial release on charges unrelated to the care of T.D.H. The Father remained in jail until August 28, 2005, when he was released to house arrest. On October 10, 2005, the trial court approved a case plan for the Father with a goal of reunification; however, on October 17, 2005, the Father was arrested for a violation of his house arrest. He was then held in the Hillsborough County Jail until his trial in December 2005. After he was convicted at trial, the Father was transferred several times to several different prison locations. The Father testified without contradiction that he lost his Social Security disability benefits when he was jailed.
The evidence presented at the adjudicatory hearing showed that the Father visited T.D.H. at the Department's facility at least once between his release from jail on August 28, 2005, and his rearrest on October 17, 2005. There was also some evidence in the Department's file showing that the Father had visited T.D.H. at his daycare facility additional times between July 7, 2005, and October 17, 2005. There was no dispute that the Father's supervised visits through the Department were limited by the fact that he was on house *1080 arrest. Moreover, there was no dispute that the Father was incarcerated as of October 17, 2005, and was therefore unable to have further visits with T.D.H.
The evidence at the adjudicatory hearing also showed that the Father sent letters to the Department on August 22, 2006, September 11, 2006, and January 28, 2007, inquiring as to the welfare and whereabouts of T.D.H. and requesting that T.D.H. be placed with the Father's sister, who was a licensed foster care parent in Georgia, if he was not already placed there. The Department's case manager admitted at the hearing that the Department did not respond to these letters from the Father. The Father also presented evidence that he sent two cards to his son through the Department's caseworker. The Father received no response to these cards.
Based on this evidence alone, the trial court found that the Father had abandoned T.D.H. by failing to visit or support him. The trial court also found that the Father had failed to contact the Department to try to complete any of his case plan tasks. However, the evidence does not support these findings. Moreover, even if it did, the evidence does not support a finding of abandonment under section 39.806(1)(b).
Section 39.806(1)(b) permits the trial court to terminate a parent's rights when the parent has "abandoned" the child, as that term is defined in section 39.01(1). Section 39.01(1) defines "abandoned" as
a situation in which the parent, . . . while being able, makes no provision for the child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations. If the efforts of the parent . . . to support and communicate with the child are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned.
(Emphasis added.) The supreme court has noted that the phrase "while being able" in the statute prohibits a court from terminating parental rights when the alleged abandonment is involuntary. Wirsing v. Dep't of Health & Rehabilitative Servs. (In re B.W.), 498 So.2d 946, 947 (Fla.1986). Moreover, incarceration does not, as a matter of law, constitute abandonment. Id. at 948; see also K.S. v. Dep't of Children & Family Servs. (In re N.S.), 898 So.2d 1194, 1198 (Fla. 2d DCA 2005); L.N. v. Dep't of Children & Family Servs. (In re E.D.), 884 So.2d 291, 294-95 (Fla. 2d DCA 2004). Thus, it is "improper to terminate parental rights if a parent is unable to financially provide for the child or to assume parental obligations due to incarceration." J.T. v. Dep't of Children & Family Servs. (In re T.B.), 819 So.2d 270, 272 (Fla. 2d DCA 2002). Instead, while incarceration is a factor that the court can consider in determining whether a child has been abandoned, the parent's efforts, or lack thereof, to assume parental duties while incarcerated must be considered in light of the limited opportunities to assume those duties while in prison. Wirsing, 498 So.2d at 948.
For example, in Wirsing, the trial court found that the father had abandoned his children during his incarceration. The supreme court reversed, noting that the father had requested that his children be brought for a visit and that he had written letters to his children and to HRS. Id. The supreme court noted that the father had "used those means available to him in maintaining contact with his children" and thus had not abandoned them as that term is defined. Id.
*1081 Similarly, in L.N., the trial court found that the mother had abandoned her children because she had not contributed to the cost of their care while incarcerated. 884 So.2d at 294. This court reversed the trial court's finding on this ground, noting that the mother was not financially able to provide for her children while she was incarcerated and that she had sent cards and letters and talked to them by phone to the extent permitted by her incarceration. Id. at 294-95.
Likewise, in T.C.S. v. State, Department of Health & Rehabilitative Services (In re G.R.S.), 647 So.2d 1025 (Fla. 4th DCA 1994), the trial court found that the father had abandoned his child while in prison. The Fourth District reversed, noting that the father had sent two letters to the child but had stopped corresponding when he got no response. Id. at 1027-28. In addition, the father had written to HRS on several occasions concerning his child, but got no response other than a mailed copy of the performance agreement. Id. at 1028. The court held that, "In view of appellant's futile attempts to maintain a two-way communication between himself and the thirteen month old child (through the custodians) and his equally futile attempts to establish a two-way communication with HRS concerning his case, the record fails to show abandonment by clear and convincing evidence." Id.
Here, as in T.C.S., the Department's evidence does not establish abandonment. Like the father in T.C.S., the Father here sent two cards to T.D.H. but stopped corresponding when he got no response. In addition, like the father in T.C.S., the Father here wrote to the Department on three occasions concerning T.D.H. but got no response. In view of the Father's efforts to maintain communication between himself and three-year-old T.D.H. and his efforts to establish communication with the Department concerning the placement of T.D.H., the record fails to show abandonment by clear and convincing evidence. See also J.R., 923 So.2d at 1206 (noting that when the father had attempted to maintain contact with his young child after incarceration and had demonstrated a strong interest in the child before incarceration, termination on the basis of abandonment was improper).
Further, the Department presented no evidence that the Father had abandoned T.D.H. by failing to provide for him financially while he was able. The evidence was undisputed that the Father had totally supported T.D.H. until T.D.H. was removed from his care in July 2005. After that time, the Father was either incarcerated or on house arrest. The Father's uncontradicted evidence was that his Social Security payments stopped upon his incarceration. In the absence of some evidence that the Father was able to provide financial support for T.D.H. while incarcerated and that he failed to do so, termination of this Father's parental rights on this basis is improper. J.T., 819 So.2d at 272; cf. C.A.H. v. Dep't of Children & Families, 830 So.2d 939, 940-41 (Fla. 4th DCA 2002) (affirming termination because the mother failed to make any effort to provide for the child during the times when she was not incarcerated).
The Department failed to present any evidence, other than the fact of the Father's incarceration, to establish that he abandoned T.D.H. The evidence does not show that the Father, who had previously assumed all parental responsibility for T.D.H. for several years, voluntarily abandoned those responsibilities upon his arrest and incarceration. Therefore, the trial court erred in finding that the Department proved its case on this statutory ground.

*1082 Threat Irrespective of Services under § 39.806(1)(c)
The trial court also found that termination of the Father's parental rights was proper because the Father engaged in conduct toward T.D.H. that demonstrated that his continuing involvement with T.D.H. threatens T.D.H.'s life, safety, well-being, or health irrespective of the provision of services. This finding is also not supported by the evidence presented at the hearing.
This court has set forth the specific standard to be applied when considering termination under section 39.806(1)(c):
[I]n order to terminate parental rights under section 39.806(1)(c), the trial court must find that the child's life, safety, or health would be threatened by continued interaction with the parent regardless of any services provided to the parent. In essence, the trial court must find that any provision of services would be futile or that the child would be threatened with harm despite any services provided to the parent.
R.W.W. v. State, Dep't of Children & Families (In re C.W.W.), 788 So.2d 1020, 1023 (Fla. 2d DCA 2001). This requires two separate findings: first, that continued inter-action with the parent threatens the life, safety, or health of the child, and second, that this threat cannot be remedied by the provision of services. See M.H. v. Dep't of Children & Families, 866 So.2d 220, 222-23 (Fla. 1st DCA 2004).
Here, the Department presented no evidence that T.D.H.'s life, safety, or health was ever threatened by interaction with his Father. The only possible exception was the one time the Father left T.D.H. unsupervised with his mother; however, the Department did not connect this single unsupervised visit with any harm to T.D.H. Further, all of the evidence presented at the adjudicatory hearing showed that the Father was considered by the Department to be a proper caregiver and a safe placement until his arrest in August 2005.
At the adjudicatory hearing and in this appeal, the Department contends that the Father's lack of full-time employment and his prior arrests show that he posed a threat of harm to T.D.H. However, these facts were well known to the Department when it placed T.D.H. with the Father in 2002 and again in 2004. In addition, the Department was aware of the Father's pending criminal charge when it placed T.D.H. with the Father in 2004 and when it chose not to seek termination of his parental rights at that time. The Department presented no evidence that the Father had not fully supported T.D.H. when T.D.H. was in his care or that the Father had committed any new criminal offenses since 2004. In light of these facts, none of the Department's evidence establishes that T.D.H. was ever threatened with harm of any kind by his interactions with the Father.
Moreover, the Department did not prove that the Father presented a threat irrespective of services, primarily because the Department did not establish that it had ever made a good faith effort to provide services to the Father. Instead, the record shows that while the Department prepared four referrals for the Father, three were never provided to him. The remaining referral, which was for outpatient anger management treatment in Tampa, was mailed to the Father while he was in prison. Other than mailing this single referral, the Department's witness admitted that the Department made no attempts to assist the Father in complying with his case plan tasks while he was incarcerated.
On this record, the trial court erred in finding that the Father presented a threat *1083 of harm to T.D.H. irrespective of the provision of services because the evidence showed that no services had ever been provided and nothing about the Father's interactions with the Department established that the provision of services would be futile. Therefore, the termination cannot be affirmed on this ground.

Continued Abandonment under § 39.806(1)(e)(1)
The trial court also found that termination was proper because the Father continued to abandon T.D.H. after having been given a case plan. This ground is likewise unsupported by the evidence in the record.
Under section 39.806(1)(e)(1), termination of parental rights is proper when the child has been adjudicated dependent, a case plan has been filed with the court, and the child continues to be abused, abandoned, or neglected. J.R., 923 So.2d at 1207-08. Termination under this section is improper when the Department has failed to make diligent efforts to assist the parent in meeting the goals of the case plan offered. C.C. v. Dep't of Children & Family Servs. (In re A.D.C.), 854 So.2d 720, 721 (Fla. 2d DCA 2003); A.H. v. State, Dep't of Children & Families (In re R.H.), 726 So.2d 377, 378 (Fla. 2d DCA 1999); K.J. v. Dep't of Children & Family Servs., 906 So.2d 1183, 1184 (Fla. 4th DCA 2005).
For example, in C.C., the record showed that the Department was aware that the father was incarcerated, and it mailed a copy of his case plan to him. 854 So.2d at 721. However, the Department never contacted C.C. in any other way to assist him with his case plan or to facilitate his compliance. This court held that, in light of the Department's concession that it did not meaningfully attempt to assist C.C. in performing his case plan tasks, the evidence was "woefully inadequate" to support a finding that C.C.'s rights could be terminated under section 39.806(1)(e)(1). Id.
Similarly, in T.M. v. Department of Children & Families, 905 So.2d 993 (Fla. 4th DCA 2005), the father was incarcerated when his case plan was accepted by the trial court. The record showed that the Department had "made no effort to assist the father in securing the type of services he would need to substantially comply with his case plan while in prison." Id. at 997. Thus, the Fourth District found that termination was improper on this basis.
Here, the Father has been incarcerated for all but one week of the time since his case plan was accepted by the trial court. The Department's efforts to assist the Father in complying with his case plan tasks were limited to mailing him a referral for outpatient services at a time when he could not take advantage of the referral due to his incarceration. Even when the Father sent letters to the Department asking about his son, the Department's only response was to mail him an updated copy of a single referral. The Department's own witness testified that the Department never made any attempt to assist the Father in finding the services he needed while he was incarcerated.
Because the Department presented no evidence that it took any meaningful steps to assist the Father in complying with his case plan, the evidence was insufficient to support a finding that the Father's rights could be terminated under section 39.806(1)(e)(1), and the trial court erred in terminating the Father's parental rights on this basis.

Material Breach under § 39.806(1)(e)(2)
In addition, the trial court found that termination was proper because the Father had materially breached the case plan. This finding is also not supported by the evidence.
*1084 The trial court supported its ruling on this issue by finding that the Father will not be able to comply with his case plan before the time for compliance has expired. However, the only evidence supporting this finding is the fact that the Father is currently in prison. Given the Department's complete failure to take any steps to assist the Father in complying with his case plan tasks, the trial court erred by finding that the Father breached the case plan simply by virtue of his incarceration.
In its brief, the Department argues that the trial court's finding that the Father breached his case plan is supported by the Father's commission of criminal offenses after he received his case plan. However, the record is clear that the Father did not commit any criminal violations after he received his case plan. While the Father did have a prior criminal record of various drug offenses, those offenses occurred long before T.D.H. was born and the Department was aware of these offenses in 2002 and 2004 when it placed T.D.H. with the Father as the "nonoffending parent." Moreover, the Department was aware of the Father's arrest on a charge of cruelty to animals when it placed T.D.H. with him in 2004; however, the Department did not seek to terminate the Father's parental rights or even to have T.D.H. declared dependent at that time. The Father did not commit any new criminal offenses after T.D.H. was placed with him in 2004. Instead, the Father's subsequent arrest was because of a violation of the terms of his house arrest. Moreover, even after the Father's arrest for the violation of his house arrest in August 2005, the Department did not seek termination. Instead, it offered the Father a case plan with a goal of reunification. On these facts, the Father's criminal record, which was well known to the Department long before any case plan was offered, cannot logically constitute a material breach of the case plan.
The Department also contends that termination is proper under section 39.806(1)(e)(2) because the Father took no steps toward completing his case plan tasks while he was not incarcerated, citing T.C. v. Department of Children & Families, 961 So.2d 1060 (Fla. 4th DCA 2007), and W.S. v. Department of Children & Families, 961 So.2d 1131 (Fla. 4th DCA 2007). However, those cases are distinguishable. In both T.C. and W.S., the record showed that the parents were not incarcerated for periods of time after their case plans had been accepted, and yet they did not take advantage of the Department's referrals during their time at liberty. On those facts, the Fourth District found that the trial court was free to conclude that the parents had materially breached their case plans.
Here, however, the Father was at liberty for only one week after his case plan was accepted by the trial court. The Department presented no evidence that the single referral it prepared during that week was ever provided to the Father. Further, the Department presented no evidence that it had provided any assistance, meaningful or otherwise, to the Father in completing his case plan tasks while he was incarcerated. Thus, unlike in T.C. and W.S., there was no evidence upon which the trial court could rely to conclude that the Father materially breached his case plan, and the trial court erred in terminating his parental rights on this basis.

Due Process Violation
Finally, while not raised by the Father in his brief to this court, we note that the face of the record establishes that a due process violation occurred when the trial court allowed counsel for the Father *1085 to withdraw but failed to appoint replacement counsel for a nine-month period even though the Father's case plan at the time included termination of his parental rights as a concurrent goal. While this error does not form the basis of the reversal in this case, we address it because the error is capable of repetition.
When the Father's case plan was accepted by the court on October 10, 2005, he was represented by counsel. The Father's case plan had concurrent goals of reunification and termination of parental rights. However, on June 1, 2006, the trial court permitted the Father's court-appointed counsel to withdraw. The trial court did not appoint replacement counsel for the Father until February 6, 2007, almost two months after the Department had filed its petition seeking to terminate the Father's parental rights.
During the nine months that the Father was without counsel, the trial court held at least one judicial review hearing. The Father did not attend this hearing because he was incarcerated, and there is nothing in the record to indicate that he was even aware of the hearing. Needless to say, no counsel appeared on behalf of the Father since none was appointed at that time. At the judicial review hearing, the trial court found that the Father had not substantially complied with his case plan, and the trial court ordered the Department to restaff the case to change the goal from reunification to termination. Apparently, these findings and orders were based solely on the essentially ex parte representations made by the Department.
In proceedings involving the possibility of the permanent termination of parental rights, an indigent parent is entitled to the appointment of counsel. In the Interest of D.B., 385 So.2d 83, 90-91 (Fla. 1980); A.C.N. v. Dep't of Children & Family Servs. (In re L.N.), 814 So.2d 1142, 1143 (Fla. 2d DCA 2002). "The right to counsel in such cases is a fundamental right under the due process clauses of the Constitution of the United States and the Florida Constitution." A.C.N., 814 So.2d at 1143-44 (citing D.B., 385 So.2d at 90). The purpose of appointing counsel is to "`ensure that the final result is reliably correct.'" A.C.N., 814 So.2d at 1144 (quoting J.B. v. Fla. Dep't of Children & Family Servs., 768 So.2d 1060, 1068 (Fla.2000)).
Here, the Father had been found indigent and had been appointed counsel when T.D.H. was first sheltered at the age of one month. There is nothing in the record to indicate that the Father was suddenly not entitled to counsel six months after he was first provided with a case plan that had a concurrent goal of termination of his parental rights. Further, the Father was entitled to be represented at the judicial review hearing at which his compliance with his case plan, or lack thereof, was discussed. Had the Father had counsel at that juncture, counsel might have been able to bring the Department's lack of meaningful assistance to the trial court's attention and might have been able to assist the Father in his dealings with the Department so that he could have been given useful referrals for services while incarcerated. Thus, while not dispositive to the issues raised in this case, we caution the trial court to ensure that indigent parents facing the possible termination of their parental rights are afforded counsel as required.

Conclusion
Because the Department failed to present clear and convincing evidence to support any of the grounds for termination alleged in the Department's petition, the trial court erred in terminating the Father's parental rights. Accordingly, we reverse the order terminating the Father's *1086 parental rights and remand for further proceedings. On remand, the Father should be given an opportunity to comply with his case plan tasks with the assistance of the Department. Should the Father fail to comply after a reasonable period of time, the Department may again seek termination.
Reversed and remanded.
CASANUEVA and SALCINES, JJ., Concur.
NOTES
[1] Our record contains very limited information about the Department's interactions with the mother. However, it appears that T.D.H. was removed from the mother because she had had two other children removed from her care and because she left him with an "inappropriate caregiver." When the Father left T.D.H. with the mother in July 2005, her case plan provided for supervised visitation only, a fact of which the Father was aware.